David Henderson
Law Offices of David Henderson
3003 Minnesota Drive, Suite 203
Anchorage, AK 99503
Phone:  907-677-1234
Fax:  888-965-9338
dh@henderson-law.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SCOTT BOYNTON, Individually, and as Special Administrator of the Estate of TOMOKO BOYNTON, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) Case No. _____ |

# COMPLAINT

COMES NOW plaintiff, Scott Boynton ["Scott"], and alleges as follows:

### Parties, Jurisdiction, Venue

1)	At all times relevant, Scott and Tomoko Boynton [hereinafter "Tomoko"] were residents of Eielson Air Force Base within the District of Alaska.

2)	At all times relevant hereto, Scott and Tomoko were validly married as husband and wife, respectively.

3) On or about December 17, 2019, Tomoko died.

4) On or about March 26, 2020, Scott applied to open an estate on Tomoko's behalf in the Superior Court for the State of Alaska, Fourth Judicial District at Fairbanks, styled *In the Matter of the Estate of Tomoko Boynton*, Case No. 4FA-20-00125PR [hereinafter "Tomoko's Estate."]

5) Scott also petitioned for appointment as Special Administrator of Tomoko's Estate.

6) On or about April 7, 2020, the court granted said application and petition, opened the estate, and appointed Scott as Tomoko's Special Administrator.

7) Scott is named as plaintiff herein in his capacity as Special Administrator of Tomoko's Estate, and individually.

8) At all times relevant hereto, the 354th Medical Group, Eielson Air Force Base hospital facility [hereinafter "354th Medical Group"] was a medical care facility, serving as an agent of defendant United States of America.

9) Upon information and belief, Dr. Maj. Elias Hydrick, D.O. [hereinafter "Dr. Hydrick"] was, at all times pertinent, 354th Medical Group's employee or agent.

10) Upon information and belief, Dr. Hydrick was and is a licensed physician.

11) Upon information and belief, various medical practitioners, who were either employed or deployed by the 354th Medical Group to render diagnosis and treatment of patients and who were acting within the scope of that employment and/or agency, also tended-to and treated Tomoko during her visit(s) and/or stay(s) at the 354th Medical Group.

COMPLAINT
*Boynton v. U.S.A.* 2

12) Each of said medical practitioners was, at all times pertinent, acting as an agent of, and/or co-participant with, each of the other, and on defendant United States' behalf.

13) At all times pertinent, Tomoko was said practitioners' patient and 354th Medical Group's patient.

14) On or about April 9, 2020, plaintiffs submitted an administrative claim for the medical negligence alleged herein on Standard Form 95 to the appropriate federal agency.

15) Through correspondence, the agency has expressly denied the claim.

16) Any medical negligence committed by 354th Medical Group through its employees, agents, or instrumentalities is actionable under the *Federal Tort Claims Act*, 28 USC §§ 1346, 2401, and 2671 *et seq*.

## **General Allegations**

17) In early December 2019, Tomoko was not feeling well. She was experiencing nausea, vomiting, and an acute, persistent, and severe headache, as well as numbness and tingling of the right buttock, leg, and foot.

18) On or about December 9, 2019, she presented to the 354th Medical Group's clinic at Eielson Air Force Base.

19) There, she was seen, evaluated, and treated by Dr. Hydrick, as his patient.

COMPLAINT
*Boynton v. U.S.A.*  3

20) Upon examination and assessment, Dr. Hydrick proceeded as if Tomoko had a migraine headache, and prescribed anti-migraine and anti-pain medication.

21) 354th Medical Group discharged Tomoko on December 9, 2019.

22) Tomoko continued to experience severe headache, as well as other signs and symptoms indicating a problem.

23) On or about December 16, 2019, Scott discovered Tomoko collapsed at home, lying in vomit.

24) Tomoko was taken to the emergency room at Fairbanks Memorial Hospital where it was determined that she had suffered a massive intracranial subarachnoid hemorrhage with intracerebral intraventricular hemorrhage.

25) She was transported to the Swedish Cherry Hill Neurological Intensive Care Unit in Seattle, Washington, which performed a CT angiogram and which determined that she had suffered a well-demonstrated aneurysm.

26) Given the minimal blood flow to vital brain tissue, treatment providers determined that Tomoko had suffered brain death.

27) They extubated her on December 17, 2019, whereupon she died some six hours later.

28) Tomoko was 42 years old at the time of her death.

29) 354th Medical Group's agents and employees failed to timely diagnose and treat Tomoko's true condition, and failed to advise her that she had the condition.

30) Tomoko presented with classic signs and symptoms of a subarachnoid hemorrhage, which required immediate investigation and treatment, and which probably could have been treated with endovascular techniques, minimal intrusiveness, and maximum effectiveness.

31) With non-negligent treatment, the aneurysm would have been completely occluded, and Tomoko likely would have survived fully intact.

32) 354th Medical Group's lapses in care constituted recklessness within the purview of AS 09.55.549(f).

33) As a direct and proximate result of 354th Medical Group's negligence and recklessness, Tomoko suffered grievously and died.

34) As a direct and proximate result of the lapses in medical care heretofore alleged, Tomoko suffered pre-death non-economic damages, including but not limited to:

    (a) Physical pain and suffering;

    (b) Emotional distress and psychological injury;

    (c) Inconvenience, and;

    (d) Loss of enjoyment of life.

35) As a direct and proximate result of the lapses in care heretofore alleged, Tomoko also suffered economic damages, including, but not limited to:

    (a) Expenses for medical care and treatment;

    (b) Burial and/or funeral expenses;

    (c) Loss of earnings and earning-capacity;

      (d)     Loss of net accumulations, and;

      (f)     Loss of household- and non-market services, including the ability to perform such services for herself and family member(s).

36) As a direct and proximate result of the lapses in care heretofore alleged, Scott has suffered, and will suffer, loss of spousal consortium.

## First Cause of Action
## Medical Negligence, Recklessness, Survival and Wrongful Death

37) Plaintiffs incorporate the preceding paragraphs as though fully set forth.

38) In accordance with Alaska's survival and wrongful death regimes, AS 09.55.570 and .580, defendant United States is liable to plaintiffs for negligence and recklessness in the minimum sum of $100,000.00, the exact amount to be proved at trial.

## Second Cause of Action
## Loss of Consortium

39) Plaintiffs incorporate the preceding paragraphs as though fully set forth.

40) Defendant United States is liable to plaintiff Scott Boynton for loss of spousal consortium in the minimum sum of $100,000.00, the exact amount to be proved at trial.

WHEREFORE plaintiffs pray for judgment awarding --

1) Compensatory damages to each in the minimum sum of $100,000, the exact amount to be proved at trial;

2) Costs and attorney's fees as may be allowable, and;

3) Any other relief the court deems equitable or appropriate.

COMPLAINT
*Boynton v. U.S.A.*                  6

DATED AT Anchorage, Alaska this 13th day of October, 2020.

        THE LAW OFFICES OF DAVID HENDERSON

        Attorneys for Plaintiff Scott Boynton

        /s/ David Henderson
        David Henderson
        Alaska Bar No. 9806014